```
                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
```

**UNITED STATES OF AMERICA** )
                                 )
        **v.**                    )   No. 1:06-CR-265-RJL
                                 )
**SILVIA MENDEZ,** )
                                 )
        **Defendant.** )

## Government's Memorandum in Aid of Sentencing

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

## Procedural Background and Governing Statutes

On October 25, 2006, defendant Silvia Mendez waived indictment and pled guilty to the sole count of a superseding information, which charged her with one count of embezzling $10,251 from Chevy Chase Bank on or about February 15, 2006, in violation of 18 U.S.C. § 656.  The defendant had not been arrested prior to the guilty plea, and remains on personal recognizance pending sentencing.  Sentencing is scheduled for 11:30 a.m. on January 26, 2007.

There is no plea agreement in this case.  The statutory maximum prison term is 30 years, and the statutory maximum fine is $1 million.  18 U.S.C. § 656.  The statutory maximum period of supervised release is five years.  Id. §§ 656, 3559(a)(2), 3583(b)(1).  Although there is no mandatory minimum prison term, probation for this offense is barred by statute.  Id. §§ 656,

3559(a)(2), 3561(a)(1). In addition, restitution is mandatory, as the offense was an offense against property and was committed by fraud and deceit. See id. § 3663A(a), (c)(1)(A)(ii); see also United States v. Ismail, 219 F.3d 76, 77 (2d Cir. 2000) (per curiam).

## Factual Background

### Defendant's Employment With Chevy Chase Bank

On January 4, 2004, defendant Mendez applied for a teller position with Chevy Chase Bank. She was 19 years old at the time. Born in El Salvador she had been in the United States since the age of 9, had graduated from high school, and had a valid work permit.

On March 26, 2004, Chevy Chase Bank extended her an offer, contingent on successful completion of a drug test, with a start date of April 5, 2004. On April 5, 2004, she began working as a customer service representative, which is essentially a teller position, at a Chevy Chase Bank branch in Bethesda, at a rate of $10.10 per hour, which was soon bumped up to $11.54 per hour. On October 4, 2004, she transferred to a College Park branch of the bank. On April 21, 2005, she was awarded a $700 salary increase, raising her annual salary to $24,700.

On May 31, 2005, she applied for a promotion to be a lead customer service representative (LCSR), a position involving supervisory and vault management responsibilities, at the bank's

Van Ness branch at 4455 Connecticut Avenue, N.W., Washington, D.C. On June 29, 2005, she was granted the promotion, and on July 6, 2005, she started working in her new position at the Van Ness branch.

On any given day, the branch had approximately 9 or 10 employees working. As LCSR, the defendant was the third highest ranking branch official, after the branch chief and the assistant branch chief.

The December 2005 Robbery

On December 1, 2005, the Van Ness branch was robbed by a man who purportedly presented a demand note to the defendant, who was working at one of the teller stations. Contrary to bank rules, the defendant had $18,500 in her cash drawer, more than $10,000 above the limit. The defendant surrendered approximately $18,000 to the robber. The defendant subsequently told an FBI special agent and an MPD detective that after she provided the robber the money, he motioned to her to return the note to him, and she complied. The defendant described the robber as being an Indian male (i.e., from or of descent from the country of India), in his late 20's. However, bank security officials and others who reviewed the security camera coverage of the incident believed the robber be an Hispanic male.

The defendant's supervisors investigated why her drawer had been so far over the limit. The defendant claimed that due to

short staffing that day she had not had time to "sell," or transfer, the excess money to the vault.  Her supervisors did not accept this excuse, however, because bank records showed that her drawer had been over the limit for most of the day prior to the robbery, when there had been numerous opportunities to sell the excess to the vault.  For that and other, less serious transgressions dating back to October 26, 2005, her vault responsibilities were removed, effective January 13, 2006, although she continued to be the branch LCSR.

The Defendant's DUI Case

On January 27, 2006, the defendant was arrested by the U.S. Park Police, in the District of Maryland, for driving under the influence of alcohol.  This case was still pending when the defendant committed the acts of embezzlement, on February 13, 2006, that are the subject the superseding information.

On May 19, 2006, she was sentenced in the DUI case, and placed on 12 months of probation, with the conditions that she pay a special assessment of $10 and a fine of $240 within 90 days, that she participate in treatment for alcohol and substance abuse, and that she attend a victim impact panel.

On September 22, 2006, two weeks after the initial information in the case before this Court was filed, the defendant's probation officer in the District of Maryland petitioned for action by the sentencing court because the

defendant had failed to timely pay the assessment and fine, had failed to attend alcohol abuse counseling, had failed to report for a scheduled visit with the probation officer, and had failed to submit monthly supervision reports for the previous three months.

The defendant appeared in court in that district on November 15, 2006, and the court continued her probation with no additional conditions.

However, on January 8, 2007, the District of Maryland probation officer petitioned the court for another hearing, alleging new violations. Specifically, while the defendant had attended an alcohol counseling class on November 15, 2006, the very day of her previous hearing, she had not attended since. In addition, the probation officer discovered that the defendant had been charged and pled guilty in the case before this Court, without advising him as required or advising the court at the November hearing.[1]

The defendant has been ordered to appear before the court supervising her probation on January 26, 2007, at 8:30 a.m.

The Embezzlement and the Defendant's Confession

On February 13, 2006, a Monday, the defendant was working at a teller station at the Van Ness branch. During the course of

---

[1] The defendant also never advised the probation officer in this District about her DUI matter.

the day, she accumulated $10,251 in currency belonging to the bank, which she placed in a brown paper bag. At the end of the work day, she walked out of the bank with the bag of money. Using knowledge gleaned from the period when she had vault responsibilities, the defendant typed up a "vault settlement" sheet showing that that precise amount of money was transferred from her drawer to the vault, and then picked up by a Dunbar Armored car for shipment. In fact, a Dunbar car had picked up $50,000 in currency from the branch that day.

The $50,000 pick-up, however, was attributable in other bank records to other tellers working at the branch that day. The following day, Chevy Chase Bank employees at the bank's offices in Bethesda received confirming information from Dunbar that the $50,000 in currency had been safely delivered to Sterling, but there was no record of the $10,251 arriving. On February 15, 2006, the defendant's supervisor confronted her on the issue. The defendant steadfastly denied knowing what had happened to the money.

The next day the defendant was directed to travel to the bank's security offices in Laurel to be interviewed by a security officer. During the interview, the security officer accused her of being complicit in the December 2005 bank robbery as well as committing the recent embezzlement. The defendant responded by

6

denying involvement in the robbery, but confessing to the embezzlement.

## Sentencing Factors

Pursuant to 18 U.S.C. § 3553(a), a sentencing court must consider the following factors in imposing a sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from the defendant, and effectively provide the defendant with needed educational or vocational training, medical care, or other correctional treatment;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established pursuant to the U.S. Sentencing Guidelines;

(5) any pertinent policy statements of the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and

(7) the need to provide restitution to any victims.

While the Sentencing Guidelines are only advisory, United States v. Booker, 543 U.S. 220, 245 (2005), a sentencing court

must first determine the applicable Guidelines sentence, including any permissible departures, and then, after considering the Guidelines and all other factors in 18 U.S.C. § 3553(a), decide whether to apply the Guidelines sentence or a non-Guidelines sentence. United States v. Crosby, 397 F.3d 103, 111, 113; accord United States v. Doe, 412 F. Supp. 2d 87, 90 (D.D.C. 2006); United States v. Edwards, 427 F. Supp. 2d 17, 27 (D.D.C. 2006) (opinion of J. Bates), affirmed per curiam, 2006 WL 2828867 (D.C. Cir., Sept. 20, 2006) (unpublished).

The Sentencing Guidelines Ranges

The government agrees with the initial Presentence Report in this matter that the governing guideline for offense conduct is section 2B1.1 of the 2006 Guidelines Manual (hereinafter cited as "U.S.S.G. § ___"), that the base offense level is 7, and that a four-level increase is appropriate because the intended loss was more than $10,000.

However, the government submits that one additional increase is justified. Specifically, U.S.S.G. § 3B1.3 provides that an upward adjustment of two levels is appropriate "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or

concealment of the offense."[2]  As the guideline application notes explain:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (<u>i.e.</u>, substantial discretionary judgment that is ordinarily given considerable deference).  Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature.  For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (<u>e.g.</u>, by making the detection of the offense or the defendant's responsibility for the offense more difficult). . . . This adjustment does not apply in the case of an embezzlement or theft by <u>an ordinary bank teller</u> or hotel clerk because such positions are not characterized by the above described factors.

U.S.S.G. § 3B1.3 app. note 1 (emphasis added).

In <u>United States v. Shyllon</u>, 304 U.S. App. D.C. 23, 10 F.3d 1 (1993), the Court of Appeals held that the following factors must be considered in determining whether the adjustment applied:

---

[2] The guideline also provides that the adjustment "may not be employed if an abuse of trust or skill is included in the base offense level."  In <u>United States v. Broumas</u>, 315 U.S. App. D.C. 24, 69 F.3d 1178 (1995), <u>cert. denied</u>, 517 U.S. 1148 (1996), the Court of Appeals held that abuse of trust is <u>not</u> already included in the base offense level for embezzlement.  <u>Id.</u> at 28, 69 F.3d at 1183.

the extent to which the position provides the freedom to commit a difficult-to-detect wrong, whether the abuse could be simply or readily noticed, defendant's duties as compared to other employees, defendant's level of specialized knowledge, defendant's level of authority in the position, and the level of public trust. Id. at 27, 10 F.3d at 5. In addition, it is important to consider the perspective of the victim as to whether the defendant held a position of trust. See United States v. Gordon, 61 F.3d 263, 269 (4th Cir. 1995) ("Overall, the question of whether the victim held a position of trust must be approached from the perspective of the victim."); United States v. Santoro, 302 F.3d 76, 82 (2d Cir. 2002) (holding that a court should "objectively evaluate whether a reasonable person in the victim's position would view the defendant as occupying a position of trust under the circumstances of the case").

Typically, a finding that a defendant was a "head teller" has warranted the abuse-of-trust adjustment in cases involving the theft or misappropriation of bank funds. See Gordon, 61 F.3d at 269 (involving defendant who aided and abetted a bank larceny); United States v. Isaacson, 155 F.3d 1083, 1084-86 (9th Cir. 1998) (involving defendant convicted under 18 U.S.C. § 656). But see United States v. Humphrey, 279 F.3d 372, 379-80 (6th Cir. 2002) (holding, in 2-1 decision, that defendant who was the "acting head teller" and also known as a "vault teller," was not

subject to abuse-of-trust adjustment in case under 18 U.S.C. § 656; and rejecting dissent's conclusion that adjustment applied because the defendant was the "head vault teller").

In this case the government submits that the victim bank certainly considered the defendant to occupy a position of trust, even after her vault responsibilities were removed.  Moreover, her supervisory duties, which she had enjoyed for four months by the time of the embezzlement, allowed her to glean how money was transferred to and from the vault and how the transfers were documented, making her crime more difficult to detect and not readily noticed.

As for acceptance of responsibility, the government agrees with the PSR that a two-level downward adjustment is appropriate under U.S.S.G. § 3E1.1(a).

In sum, the government submits that the adjusted offense level should be 11.

The government does not dispute the PSR's calculation of the defendant's Criminal History Category at Level I.

Accordingly, the defendant's guideline ranges (assuming the adjusted offense level is 11) are as follows:  8-14 months of imprisonment, pursuant to U.S.S.G. ch. 5, pt. A (within Zone C); 3-5 years of supervised release, pursuant to U.S.S.G. § 5D1.2(a)(1); and a fine of $2000 to $1 million, pursuant to U.S.S.G. § 5E1.2.

The Other § 3553(a) Factors

The government does not intend to ask for a sentence above the applicable guideline ranges.  However, we submit that the other factors in 18 U.S.C. § 3553(a) merit a sentence at the upper end of the ranges for imprisonment and supervised release, and disfavor a sentence that permits the defendant to serve part of her prison term through community confinement or home detention (allowable for Zone C prison ranges, see U.S.S.G. ch. 5, pt A; § 5C1.1(d)).

For one, the nature and circumstances of the offense compel a sentence at the upper ends of those ranges.  Specifically, the defendant was exceptionally brazen in committing this offense so soon after her branch had been victimized in a robbery where she herself provided the money to the robber, even assuming she was not complicit in that offense.  Also, her own history and characteristics, specifically, of non-compliance with the terms of her probation in the District of Maryland, her commission of this offense less than a month after her DUI arrest, and her failure to advise the probation officer in this case about the DUI case, merit such a sentence.

This defendant does not suffer from a lack of educational or vocational opportunities.  She is a high-school graduate who has attended come college.  Notably, she continues to maintain employment even after being fired from the bank.  Nor does she

need medical care or other treatment that must be addressed in the sentence.  Accordingly, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from the defendant, is unmitigated.

As for the remaining factors, the government is unaware of any applicable Sentencing Commission policy statements, and the need to avoid unwarranted sentencing disparity is met if the Court sentences within the Guideline ranges.  And in this particular case, restitution is mandatory.

## Conclusion

The defendant should be sentenced to a prison term and a term of supervised release at the upper end of the applicable guideline ranges.

                    Respectfully submitted,

                    JEFFREY A. TAYLOR
                    United States Attorney

                        /s/
     by: _____
                    Michael C. Liebman
                    Assistant United States Attorney
                    D.C. Bar No. 479562
                    555 Fourth Street, N.W., room 4231
                    Washington, D.C.  20530
                    353-2385
                    michael.liebman@usdoj.gov